■ BURGESS MEREDITH, Individually and as a Shareholder on Behalf of CAMP HILL ESTATES, INC., Appellant, v CAMP HILL ESTATES, INC., et al., Respondents.—In a shareholder's derivative action alleging waste of corporate assets and seeking, *inter alia,* money damages and to set aside a conveyance of real property, plaintiff appeals from a judgment of the Supreme Court, Rockland County, entered January 8, 1979, which, after a nonjury trial, dismissed the complaint. Judgment reversed, on the law and the facts, with costs, and judgment is granted in favor of plaintiff, on behalf of defendant Camp Hill Estates, Inc., against the remaining defendants. The action is remitted to the Supreme Court, Rockland County, for further proceedings consistent herewith. Plaintiff Meredith, owner of a 28-acre parcel of land in Pomona, Rockland County, sold such parcel to the defendant Camp Hill Estates, Inc. (Camp Hill) in 1973. Camp Hill was formed that year to make the necessary purchase. Plaintiff retained an interest in the subject parcel by becoming a 20% shareholder of Camp Hill, and as part of the purchase price, plaintiff took back a purchase-money mortgage of $124,170. The mortgage provided, *inter alia,* for release of 25% of the land purchased without further consideration. Thereafter, on or about June 4, 1976, plaintiff, as mortgagee, released from the mortgage lien approximately seven acres of the 28-acre parcel. At a shareholders' meeting on June 17, 1976, defendants-respondents Occhipinti, Landa and Stern, each of whom was a director and owned or controlled 20% of the shares of Camp Hill, voted to convey the seven-acre portion to the defendant-respondent Cherdine Realty Corporation (Cherdine) without consideration. Plaintiff objected to the transfer, and defendant-respondent Klingher, the remaining 20% shareholder, did not object to it. The deed into Cherdine recited that the conveyance was made pursuant to a resolution of the majority of the board of directors, who were also a majority of the stockholders, at a special meeting and that there was no provision in the certificate of incorporation requiring greater than a majority vote (see Business Corporation Law, § 616, subd [a], par [1]). The record also reveals that up to June 17, 1976, the date of the conveyance to Cherdine, all payments were made under the terms of the purchase-money mortgage held by plaintiff. However, no payments of interest, principal or real estate taxes were made by Camp Hill on such mortgage after that date. As a result plaintiff brought a foreclosure action on the remaining 21 acres of the parcel and obtained a judgment of foreclosure. In dismissing this derivative action alleging waste of corporate assets, the trial court held that the conveyance by Camp Hill to Cherdine did not deprive the former corporation of its assets since it retained title to the remaining acreage, that there was no proof that the conveyance rendered Camp Hill insolvent, and that since plaintiff knowingly released seven acres from the mortgage lien without any further consideration to him, he must have satisfied himself that the remaining acreage would constitute sufficient security for the continuing lien of his mortgage. Thus, the trial court concluded, *inter alia,* that plaintiff failed to sustain his burden of proving that the conveyance constituted a waste of the corporate assets of Camp Hill or that it rendered that company insolvent. Based on the evidence adduced at the trial, we disagree with such conclusion and grant judgment on plaintiff's derivative claim for corporate waste by reason of the transfer of the seven-acre plot by Camp Hill to Cherdine without considera-

tion. At the trial defendant Occhipinti (one of the 20% shareholders) testified that Camp Hill's difficulties began in 1976 when Klingher (another 20% shareholder) refused to continue paying money into the corporation to be used for payment of interest and taxes on the mortgaged property. Occhipinti sought from Meredith a moratorium on payments "since it was during a recession time of real estate; that at a later date we could merchandise this property for a profit." After the attempt to negotiate a moratorium failed and it became clear that Meredith would insist on fulfillment of Camp Hill's obligations under the mortgage, the transfer without consideration to Cherdine was effected on June 17, 1976. Thereafter no further payments of principal, interest or taxes were made on the mortgage. Klingher testified that his prime involvement with Camp Hill Estates, aside from his involvement in the corporation's formation, was as an investor and that the corporation had "no day-to-day operations, really. It was just a question of getting the bills and paying the taxes. What would happen is every so often I would get a note saying send X dollars for interest and X dollars for taxes and I would do it." By the time of the Camp Hill shareholders' or directors' meeting on May 25, 1976, Mr. Klingher apparently became less optimistic about his investment in the corporation, for at the May 25 meeting the participants, in Klingher's words, discussed: "A lot of things including my non-payment of the last call, and I stated as far as I was concerned I made an investment which I didn't feel required any further investment to protect the initial investment. In my head I had written it off almost." Thus the record convincingly demonstrates that the prime motivation for the transfer to Cherdine Realty Corp. was to accomodate the personal investment decision of Mr. Klingher and not to confer a benefit upon the corporation.* In particular, the record suggests an investment decision on the part of the majority shareholders, after the moratorium proposal collapsed, to default on the mortgage payments to Meredith and to minimize their personal losses by insulating the seven-acre parcel (via the transfer to Cherdine) from a possible deficiency judgment in Meredith's favor after the foreclosure on the mortgaged 21-acre parcel. Plaintiff has succeeded in establishing that the transfer without consideration on the seven-acre parcel of real property owned by Camp Hill Estates to the defendant Cherdine Realty Corp. was "so far opposed to the true interests" of Camp Hill "as to lead to the clear inference that no one thus acting could have been influenced by any honest desire to secure such interests" (Gamble v Queens County Water Co., 123 NY 91, 99). The transfer constituted a waste of corporate assets which may not be ratified by a majority of the shareholders (see Godley v Crandall & Godley Co., 212 NY 121, 131-133; Boaz v Sterlingworth Ry. Supply Co., 68 App Div 1). Respondents attempt to reply to the contention of corporate waste by emphasizing appellant Meredith's status as Camp Hill's creditor. Meredith qua shareholder, they argue, does not really seek to benefit the corporation, because his obvious motivation in the derivative action is to return the seven-acre parcel to Camp Hill for the benefit of Meredith qua creditor and to the detriment of the shareholders. Such argument is specious. Plaintiff correctly observes that a derivative action lies whenever there is a clear legal right to maintain the action, regardless of the plaintiff shareholder's individual motive for bring-

---

* A letter from Occhipinti to Meredith, dated February 20, 1976, contained the following pertinent statement: "[Leon Klingher's] irresponsible actions in refusing to contribute his share of the taxes [on the Camp Hill Estates' property] does nothing but endanger the investment of everyone concerned."

ing the suit (see *Pollitz v Wabash R. R. Co.,* 150 App Div 715, mod 207 NY. 113; *Gottfried v Gottfried,* 112 NYS2d 431). When the seven-acre parcel is returned to Camp Hill Estates, it will undoubtedly reap a benefit, one incidental aspect of which will be an improved ability to meet outstanding debts. Assuming the Camp Hill shareholders suffer a loss after the debts are paid, such happenstance would occur because the value of their stock declined in the normal course of events and not because of any illicit motive underlying the bringing of appellant's derivative action. However, although we believe plaintiff should prevail in his action for corporate waste, at this juncture of the action we are unable to ascertain what relief should be granted him. Therefore the matter is remitted to the trial court for a further hearing and a determination as to plaintiff's appropriate remedy and of his reasonable expenses, including attorney's fees (see Business Corporation Law, § 626, subd [e]). Mollen, P. J., Hopkins, Titone and Mangano, JJ., concur.